Christopher Burke appearing for appellant. Sarah E. Smith appearing for appellee. Good morning. May it please the court, I'd like to reserve three minutes for rebuttal. Very good. Go ahead, please. There's four reasons why the bankruptcy court's decision should be reversed. First, this was not property acquired after the commencement of the case. Second, the property revested in the debtor upon confirmation. Third, the trustee's modification didn't seek a new effective date of the plan to re-evaluate liquidation. And finally, the plan was completed prior to the modification by the trustee. Now, since my briefs were filed, I read the court's murder opinion, and I realized that's not going to go very far. I would like to reserve that in case this goes up. And I do want to make a couple of points on that if I have time later. But going to the point, my first point, there was no property acquired after the filing. The debtor had it, and the Ninth Circuit in green says to acquire is to purchase, to get an ownership interest. Here, the pre-petition property, the form may have changed when it's sold, but not the nature. Second, the property revested in the debtor, it was fully his. I don't even think I had to file a motion with the court to sell it in reading some of these revesting cases. But obviously, title companies and realtors, they want an order from the court. So we did go through the court. But in retrospect, we may not have even needed to. It was his absolutely, according to the Baps-Jones case. Also, Bergey wouldn't allow a lump sum payment from a pre-petition asset, exempt or not, to be turned over to the trustee. So the court here said, yeah, turn it all over. But there was no basis for that. And you can't force a debtor to do it. You can't compel him. The court did. Third. What happened to make this property sell for so much more than it was scheduled at? I mean, did it really more than double in value in three years? Well, it was closer to five years. But yeah, it did double. Properties picked up again here. Now they're stagnant. But that's exactly what happened. So you think it's post-petition appreciation? All of it. Third, the effective date of the plan, and this is an issue that hasn't been directly addressed by this panel. But I did find a Ninth Circuit case, Hoopi, which says that confirmation is the effective date of the plan. And then I found two bankruptcy court cases, unfortunately not in my brief, that agree there's one liquidation date, the date of confirmation. That's the effective date. You don't change it later on. One is out of Western District of 573 BR 844. And then Judge Haynes in Arizona had the Gibson case, 415 BR 735. In that case, interestingly, the property value went down and the debtor tried to change liquidation. And the court said, no, you had liquidation at the time of confirmation. And we're not going to give you a new effective date and change the liquidation. And so there was no back in. It was the debtors. There was no basis to compel him to pay the lump sum over. There was no change in the disposable income. So the plan couldn't have been confirmed because he couldn't have paid for it unless you force him to put that money in, which at 13 is not set up to it. And I realized this court is probably, no, he didn't finish, complete the plan. A couple of things. I read Flores over and over, and not necessarily that I agree with Flores, but at least five times it seems to say if the ACP is 36 months, that's when you have to bring the modification. Here the modification was brought around month 50. And I'll just quote from it a couple of times. It says, rather, and it's all on pages 859 to 861, rather the applicable commitment period is expressly incorporated as a temporal limit for purposes of plan modification under section 1329. Second, thus the statute defines a temporal window within which modified payments under 1329 may be made by reference to the applicable commitment period. But what if the debtor proposes a plan that's longer than the applicable commitment period, like your client did? Understood. And that's why I'm not sure I agree with this, but it is Ninth Circuit precedent. And it seems to say you got to do it in that window, because we know that this changed Kagan-Biama. And Kagan-Biama said, oh, no disposable income, no applicable commitment period. Now Flores came back and said, wait a second, there has to be a minimum applicable commitment period, even if there's no disposable income, so that a modification can be done within that window. And so I'll give you a third quote. I'm sorry to interrupt, but isn't the real question that Judge Ferris is asking, I wanted to confirm, do you agree that your plan required the debtor to make payments for 59 months? Yes. Okay. And isn't the law and modification that a modification could be done anytime before the plan is complete? Right. And isn't the plan not complete until the final payment has been made? Well, the final payment was made in month 51. But I understand the panel and two of the judges are here on that. You shot that argument down. But what I'm saying is, I'm not sure Flores says what or how I read it in Murdutt. And so, I mean, give you a third quote. Unsecured credit may request a later modification of the plan to increase the debtor's payments if the debtor acquires disposable income during the pendency of the applicable commitment period. Again, they're talking about the applicable commitment period. Fourth quote. So you're saying if you wanted to file a modification of a 59-month plan after the applicable commitment period of, you know, 36 months, you couldn't do it. Right? As a debtor's counsel, you couldn't do it either? You stuck to the applicable commitment period according to what Flores is saying. So something happened in month 46 and your client is then out of luck. They may be. Because they can't modify the plan, so they lose their, the case is dismissed and they lose their discharge. Well, you're assuming it's going to be dismissed. They might convert to a seven. Maybe they completed payments. Maybe they can borrow a lump sum and voluntarily pay it, which is what Mr. Black did here. But they could do a plan modification under the logic you're using after the applicable commitment period. That option at least would be off the table if you're correct. Well, I said at the beginning, I'm not sure I agree with it. But I'm saying that's what Flores says. I'll give you a fourth quote. By ensuring the availability of plan modification over the applicable commitment period. See, again, and it ends. Let's just assume a more common situation where the plan obligation does not extend beyond the ACP. In other words, in the cases you're plan obligation, was it coterminous with the ACP or did it extend past the ACP as in this case? It went past, but it's not, that wasn't the issue here. I'm saying when I read Flores, five times it says modifications have to be within the applicable commitment period. And I said from the beginning, I'm not sure I agree with it, but it is Ninth Circuit precedent. And I would ask the court, because this may go up, to perhaps revisit that issue in light of Murdud. But fortunately, in this case, we never get there. Why? Because the property never comes in. The court forced something that it shouldn't have forced. If there's no further questions, I'll reserve my time for rebuttal. Okay. You have about seven minutes reserved. Thank you. Thank you. Ms. Smith, is it? Yes. Thank you, Your Honors. Got to get me one of those back home. Good morning, Your Honors. May it please the court, my name is Sarah Smith, and I represent the respondent, Chapter 13, Trustee Kathleen Leavitt. Today we ask you to uphold the Bankruptcy Court's decision when it approved the Chapter 13's modified plan number three. And because the property, the proceeds from the Washington Avenue property are property of the state, and they're appropriately brought in through the modified Chapter 13 plan. So what does revesting mean, in your view? Well, revesting means something special in this plan, because property vests in the debtor at the time of confirmation, unless the plan states otherwise. And in this Chapter 13 plan, the plan specifically states that any property of the state scheduled under 521I shall vest in debtor upon confirmation of this plan. So it's the trustee's position that the property scheduled was the West Washington Avenue property at $44,000, not the post-confirmation appreciation. Does your case turn on whether or not we accept that post-confirmation appreciation is in fact distinct property because it wasn't scheduled? It may well, Your Honor. Yes. And the Bankruptcy is one of the precise issues to be decided. So he was aware of this issue when he made the decision, and he rejected the vesting argument. So what should they have said in the schedule then, besides $44,000, if that was the value at the time? Are you saying plus it should have said, and not anything more, no additional increase in value, or is it $44,000, you know, parentheses, and whatever it's worth later on before the case is completed? Is that what you're saying that means? Possibly. But actually, I would have suggested that that would be a term of the plan, because the plan itself says that property scheduled under 521 vests in the debtor at the time of confirmation. Is that the right answer, just to have it not do that? They do. And I know that my client has concerns about waiting for all property to vest until completion of the plan because of the liability to the estate. So in some cases, it makes sense to revest property. But generally, the practice in Las Vegas has been not to retain all property in the estate, just really because of the liability that can come about to the estate. So it's sort of a, that makes it sound like it's kind of a heads I win, tails you lose proposition. I get rid of the property because it benefits the trustee and the estate, but I'm really not getting rid of the property if it sells for more than we expected. Well, when you put it that way, that's true. But I mean, I think it's also contemplated. It's contemplated by, I mean, you have the contemplation that a plan can be confirmed at a later date. You've got 1306 that contemplates property of the estate that can continue to come in until completion and discharge and closing the case. And you have earnings that can come in. So if property of the estate can come in, you have earnings that can come in, and it can come in through a plan modification under 1329. So yes, we do have this position where we say the property vests in you, but we also have the bankruptcy laws that allow us to also bring these issues before the court later when maybe there is appreciation in property value. Or in this case, where the debtor self, I've got a new term, the debtor self-liquidates their estate, right? And this is a debtor who filed a Chapter 7 originally when he realized that the Chapter 7 trustee was going to liquidate his estate. He hired Mr. Burke, who then assisted to facilitate converting to a Chapter 13. But part of his pleading was that he wanted to retain his rental property and pay his creditors. And instead what he's done is a few years into his Chapter 13, he sells that rental property, and he wants to keep the proceeds and not pay his creditors. But he said he would sell or refinance. He said he would sell or refinance a property. But I'm assuming that refinance at the beginning was probably the preferred option because he said he wanted to keep the property, but sale was probably included as an option to meet the feasibility test. You know, what happens if he can't do the refi, a guy on separately gets Social Security income and so forth. Sure. And actually, this Washington Avenue property was free and clear at the time, which is why it had the value. It was free and clear. He owned a few other properties. Most of them were undersecured. He had a primary residence. He actually did a lien strip on. We have plenty of cases right now that are predicated upon the debtor refinancing their primary residence to cash out equity and use it to fund the plan. So it wouldn't have been unthought of that Mr. Black intended to do that with this Chapter 13 plan. But isn't that usually done to meet other confirmation requirements? In other words, you don't sell the residence simply to provide more money for creditors. You do it to meet the best interest of creditors test, to meet the Chapter 7 liquidation test. Or maybe you can't make, I'm sorry, you can't make plan payments that add up to the required payments out of the property. But debtors typically don't propose sales just to shift more money to creditors. They do it to meet some other plan confirmation requirement. I agree. Generally, they're proposing a sale to either meet the liquidation value or to meet the other required payments secured in priority creditors. I wanted to address the assertion that the Berge decision from this panel should apply here. I think that it should not. Berge was very clearly about proceeds as disposable income. The court, it wasn't clear to that court what the trustee's purpose or basis for the modification was. So it assumed without deciding that 1325B applies and that the proceeds of the sale of debtors' real estate in Chapter 13 never become disposable income for Chapter 13. So the Berge decision was based entirely on bringing in those proceeds as disposable income. But here what we're asking is to bring in those proceeds as property of the estate. So Berge does not apply as a precedent. Can I ask, to put it bluntly, who cares whether property is or isn't property of the estate? Isn't the question what the plan requires and what 1329 can permit you to change the plan to require? I'm sorry, Your Honor. Could you ask the question again? I didn't understand. Well, I'm not sure I see the connection, the logical connection between saying that the home and its increased value are estate property and saying that they must be contributed to a plan. If I think I understand you correctly, so who cares? The trustee cares because that's her position to do so. How does it fit in with 1325A4 and the best interest test, which isn't, don't you concede, has to be done as a snapshot at the initial confirmation? Well, I don't concede that, actually, because during the preparation for this hearing and in reading the Stinson case that the debtor cited to arguing that sometimes liquidation value does need or should be revisited, I gave more consideration to the 1325A4 issue in the when we did the modified plan. We just said it's property estate. It should be turned over. Property estate under 1306, 1322B8 allows the plan to be funded by property estate, and then 1329 allows a plan to be modified to increase distribution from creditors. So that's how we brought in the property estate. That's the legal basis. But then reading Stinson, which was an argument about liquidation value, it took me back to the First Circuit case in Barbosa v. Solomon, which is a good case to look to for some guidance. Part of the Barbosa v. Solomon decision was establishing liquidation value. Now, I would also note there's a Ninth Circuit bankruptcy appellate panel case. It's Eaton, a 2006 case, and that's 2006 bankruptcy Lexis 4862, that seem to say that liquidation value is under 1325A4. That time to determine liquidation value is at the effective date of the modified plan. So while this wasn't a consideration in the lower court, it wasn't a consideration. It was brought up and Judge was part of this, but it really wasn't part of the ruling. I would say if you look at the case law, I think the tendency is that liquidation value should be reset under 1325A4 at the time of the effective date of the modified plan. Does that answer your question? Thank you. So talking about Barbosa, Barbosa actually is a First Circuit case. This court may want to look to for some guidance. It has a very similar set of facts to this case, where in that case they were crammed down a property at the start of their case. Because of that cram down where they were to pay the value of the property through the Chapter 13 plan, they were able to then, I don't know if it was to sell or refinance, and they were able to capitalize on that lower value, and actually there was proceeds that came into the estate. And the Barbosa court properly found that the appropriate method to bring an additional property estate is through a modified plan, which is what we've done here. Another thing I would note, there's a couple of cases that were brought up in the reply from the appellant. That's the Fitech case and the Trumpist case. And I think those two cases were very interesting because they discuss, their cases were, they discuss the debtor liquidating an estate. And in the Fitech case, the court said that it was appropriate for the trustee to modify a plan to bring in funds when the debtor on their own doing took, terminated their employment, so they changed the PERS account into a cash asset. And so once they did that, the court said yes, the trustee can bring in that cash asset that was a result of the debtor's own liquidation to fund the plan. And then the Trumpist case was interesting because it said that it was a unsecured creditor who tried to file a motion to compel the debtor to refinance their property to pull out equity. And so they were going to modify the plan, force the debtor to pull out equity, and pay that to their unsecured creditors. And the court said the fact that the debtor has not realized proceeds from the appreciation of her home distinguishes her case, distinguishes her case from the Barbosa case. So I think that might be something, that's an important thing to look at too. This is the case Mr. Black liquidated his asset. And when he liquidated his asset, he created this cash proceeds that need to be turned over the Chapter 13, and that was done appropriately through the Chapter 13 modification. The other arguments is the timing of modification. And I think Judge Kershaw, you were onto something when you said, well, doesn't that mean that the plan is not complete until the final payments are made? So as Mr. Burke has some weight to this argument, the Escarciga opinion from this panel that was in 2017, I think made it very clear that payments under a plan have to continue for the duration provided for in the initial plan, absent modification, before being considered complete for the purposes of modification and discharge. So in the Ninth Circuit, since the 2005 amendments, we've had this series of questions about what does a commitment period mean? How does that relate to whether or not a plan can be modified? I think if you have a commitment period of 36 months, once you're past that commitment period, I tend to agree that it's, that a modification to bring in additional income by an outside party, not the debtor themselves, may be an issue. However, this is a modification to bring in, again, property estate, and it was done before the 59th month. The debtor had proposed a 59-month plan. He confirmed a 59-month plan, and he was bound by that 59-month plan until he modified his plan or he completed those plan terms. And then finally, there is an argument that the trustee's plan form was not correct, citing to the profit case. And in profit, the court said the plan must not only timely file, but also satisfy the requirements of 1322, 25, and 29. And I would assert that this plan does. In the profit case, there was, the money had already been reinvested. There was a question about exemptions and whether or not the property was property estate. Here, we have the cash, it's cash on hand. Thank you. You've got your time, Lou. Thank you very much. Oh, thank you, Your Honor. Your Honor, may I just, concluding statement? Not necessarily. Thank you very much. I appreciate it. I think you have seven minutes, if my notes are correct. Go ahead, please. Thank you. I'm sure I won't use all of that to make a few points. The confirmed plan didn't say that or provide for an adjustment in payments if the property later was sold for more. The confirmed plan is stuck as it is. The liquidation stayed at that level and shouldn't be moved. Now, counsel brings up Barbosa, but in the Jones case, which noted Barbosa, the BAP said, no, we're going to take the estate termination approach and all the property goes back to the debtor. So argument Barbosa is not relevant to this panel. Second, Bergey, I'll quote it, an examination of the basic structure of chapter 13 makes it clear that the debtors cannot be compelled to use the proceeds from the sale of pre-petition real estate to pay creditors under confirmed chapter 13 plan. I understand disposable income was an issue in this case, but aside from that, it's clear. It's not, it cannot be used to pay the creditors later on. Third, I did ask for a leave to amend to add to the record and the panel said they would wait until the hearing on the merits. And the reason for that is if this does go up, I'm going to at least put in the argument that the plan was completed. I understand it's not going to go very far here, but that's not, well, the status of payments isn't really disputed, right? I mean, in other words, there's no dispute that your client made the payment your client says was made, right? And it was done before the modification. If that's accepted, then right. I don't really need it to come in. That was just to back that up. In essence, though, what we're doing, we're penalizing the debtor for paying maybe eight months early. Is that what we really want to do? What's the cutoff? What if in month 58, he pays everything? Oh, that's not a completed plan. So he paid it eight months early. So wait out the time. They can start taking their second class and the trustee can start putting things together. I don't see how he committed some mortal sin by paying it off early. And he volunteered to pay that. And of course, I encouraged him because I see when people get money, they don't pay it. It goes away. So I said, you need to complete this, pay this in. And it's actually, he paid a little more than I think he was even supposed to because I don't think he had 4,000 more separate. Again, I'll just bring up the liquidation and the effective date. That is a big issue. But I think the Ninth Circuit, if plan confirmation is the effective date, and that's what HOOPAI says, and then there's two bankruptcy court decisions that back that up. And what's interesting about Judge Haynes' case is where the property did go down and the debtor tries to refinance. And he said, no, you're stuck on that liquidation. And so it covers both sides of the equation. The debtors are stuck with it too. If they can't pay it, it gets dismissed or converted. So I would ask that the bankruptcy court's decision be reversed on the grounds stated throughout this argument. Thank you. I have a question here. You got more time? I have a question. Yes. So 1329 is one of the toughest sections of the code for me to understand in terms of what it permits. And I want to get your views. Is there any limit? Using the language in 1329, how do we come up with limits on what can be in a modification? We know from 1329B that certain sections, not all of the other Chapter 13 sections apply, but arguably those sections set a floor rather than a ceiling on modifications. Why is it that trustee or creditor can't come in and said, I prefer more money? And A1 says I can increase the payments under the plan. So where do we see in 1329 that the modification can't require the debtor to pay more than would have been required in an initial plan? I'm not saying that, but there has to be a basis behind it. Either the disposable income went up or perhaps maybe a post-petition windfall would come in. But what we're talking about here is just a pre-petition asset that was already accounted for and the debtor's getting penalized because it went up. And he would have suffered if it went down. If it went down to $10,000 and I went to modify it and say, well, we're just going to pay $10,000, the trustee would be all over that. No, you agreed to $45,000. And where that's most clear? A vehicle. If I had an excess non-exempt vehicle for $10,000 and I modified the plan every year because it went down, the car in the end would probably get $1,000 or $2,000. So after the first year, I need to modify it. The effective date has to be at the time of liquidation. But going back to your question, I'm not saying that people can't pay more, but there has to be a basis. And it wasn't here. They admit that the disposable income didn't change. We know that they can't force a pre-petition asset to come in. Nothing happened besides that. The property went up in value. 70 years old. This is retirement. And it's getting dwindled with each appeal. Okay. Any further questions? No. Okay. Thank you very much. Thank you. Thanks to both sides for their arguments. The matter is submitted.
judges: Faris, Brand, Hercher